Sam Lieberman of WilmerHale, Pro Bono Counsel for Petitioner Wilhelm Straub. I would like to reserve two minutes for rebuttal. What do we have left? On behalf of the Court, we would like to thank you for accepting this case pro bono. Thank you very much. It's an honor. Thank you. Mr. Straub, who has lived in the United States for the last 30 years and whose parents are U.S. citizens, here seeks a remand to the BIA to address the merits of his appeal. Mr. Travertine counseled to handle his BIA appeal, raising several issues, including adjustment of status, asylum, and a claim of ineffective assistance of counsel by his IJ counsel. However, he was deprived of that appeal when his BIA counsel filed an untimely notice of appeal, which is manifest deficient counsel. Counsel, I think the government has agreed that if there's jurisdiction over this case, it should be remanded. So could you focus on that for a moment as to why there's jurisdiction in this case? Absolutely. That is the only issue here. And there is jurisdiction, and there are two preliminary points that should not be subject to serious dispute here. The first principle being that this Court has jurisdiction to hear an ineffective assistance of counsel claim based on the fact that counsel filed an untimely notice of appeal. But it has to be exhausted, right? Well, that brings us to the second point. Now, with respect to exhaustion, the second point that's clear is that statutory exhaustion does not apply here because a motion to reopen is not a remedy available as a matter of right. So the key issue that the parties should be disputing here is whether the Court's discretionary prudential exhaustion doctrine should be applied to deprive Mr. Straub of a forum for his BIA appeal. And we submit the answer is no. For the first reason is that applying the prudential exhaustion doctrine here would work in injustice where Mr. Straub lacks effective and knowledgeable counsel, and at the present moment, a motion to reopen would be futile. The 90-day period for filing a motion to reopen under the regulation is expired. Also, Mr. Straub has filed more than one motion to reopen, and therefore, the numerical limitation has also been exceeded. Further, the exceptions are not readily available to Mr. Straub here. Second, none of the policies that implicate the – none of the policies behind the prudential exhaustion doctrine are really implicated here. First, the agency in this situation, their expertise is not needed because the error of counsel is clear from the record. Filing an untimely notice of appeal is just a matter of seeing that the filing date has been blown. Second, in this situation, we're not dealing with the significant risk of agency bypass because what Mr. Straub is seeking here is to go back to the BIA. He actually seeks BIA review of the merits of his appeal. And the third policy animating the prudential exhaustion doctrine is not implicated here as well because this is not a situation where we're depriving the BIA of an opportunity to correct one of its errors. Rather, the error complained of here is the error of counsel, which is the obvious mistake of filing a late notice of appeal. Kennedy. But it would deprive the agency of an opportunity to determine in the first instance whether counsel is ineffective. Well, in this situation where the parties are determining jurisdiction, the agent – the only issue is whether or not there is jurisdiction, given the fact that the court – given the fact that counsel had filed an untimely notice of appeal. Did you understand my question? We are depriving them of the opportunity to determine whether or not there is jurisdiction. Are we not – would we not be depriving the agency of the opportunity to determine whether counsel is ineffective? I believe we would not be doing that because that is a matter that's clear from this Court's precedent, and it is just a matter of looking as to whether or not the notice of appeal is untimely. And how does that not deprive the agency of the opportunity to make that decision in the first instance? Whereas here, it's obvious from the – I mean, perhaps the agency would not be able to be the first one to make that pronouncement, but I don't think that's in the situation. I mean, it's a simple statement which you can agree with or not. You chose to disagree with it, and I don't know why you're choosing to disagree with it because it's perfectly obvious that it's right. Now, you may say that's okay nevertheless, but you choose to make your stand on something that strikes me as absolutely unfruitful. And let me say it one more time, and you can say I agree or disagree, and I will let it go. This would deprive the agency of the opportunity to determine in the first instance whether or not counsel is ineffective. True or false? This would deprive the agency of the opportunity to say the counsel made an error, the first opportunity. However, the prudential exhaustion – True or false? Are those words not in your vocabulary? Do you know the meaning of yes and no? I mean, why are you systematically stating what I said? You either agree with what I said or disagree with it. If you disagree with it, then you can correct it or change it to make it more like what you think is true. If you think it is true, tell me it's true. But your clock is ticking. It's a simple statement. Do you want me to repeat it one more time so you can see whether or not you agree with it? No, I understand that. Okay. Is it true or is it not true? If it's not completely true, then you can say it's not true and tell me why not. If it's true, go ahead and tell me that, and we can go on to the next point. Well, no, the agency would not have the opportunity – the agency would not be making that decision. Well, the next word out of your mouth, I would like to be true or not true. Okay. I don't want a word. I don't want a sentence. I don't want explanation. Do you understand the concept of – Yes. True. Okay. Now, why does that not – why isn't the fact – he can't exhaust now. Why isn't that a sufficient reason for holding we don't have jurisdiction? Sorry, what? He blew his chance to submit this issue to the agency in the first instance. Well, he lacked effective counsel at the time that that happened, and this Court in two cases has declined to exercise the prudential exhaustion doctrine in almost identical situations. Well, he could have gone back within 90 days, couldn't he have, and moved to reopen on grounds of ineffective assistance. Within 90 days of the time that his counsel filed the late notice of appeal, he could have gone back to the agency, said reopen, and the basis for reopening is my counsel was ineffective. He did have that opportunity. And I'd really like a yes or no answer. Yes, that is true, just like the petitioner in Hernandez-Mendoza. And he didn't do that. That, you know, that is true. And the situation – Now we're communicating. Okay. And if I can make – that's right. Okay. So I'm just trying to get you to an interesting part of the argument, trying to get past the stuff that we all agree on to get you to someplace interesting. So given that he has bypassed the opportunity to present this issue to the agency that he had an opportunity to, and he bypassed opportunity, he's out of time, how – you know, now you get a chance to explain. Tell me how we still have jurisdiction. Well, Mr. Straub at that time was operating pro se. He did not have the benefit. That's the reason. It's not a – that tells us why he did that. But so what? Well, this Court and the Supreme Court have long recognized that pro se petitioners are held to more lenient standards on – for the purposes of the exhaustion rule because, as the Court said – the Supreme Court said in Slack v. McDaniel, the complete exhaustion – But he's never exhausted. He has never gone back. He's not asked the agency for additional time to file a motion for reopen. He hasn't gone back even when he had well-heeled counsel and petitioned the agency for leave to file a late motion to reopen to raise the point. Instead, he came into court. I mean, he could still do today. He could – is there some bar for asking the agency as a matter of discretion to reopen the 90-day period and consider an effective assistance counsel claim? Well, in fact, you know, the agency was presented with the obvious and effective assistance of counsel, did not exercise sua sponte at that time to treat it as a motion to reopen. At one point, the government, in fact – When was this? Well, this is when the late notice of appeal came to the agency. But the agency chose not to recognize the obvious and effective assistance and instead to summarily dismiss the appeal and never get to the merits. Now, at one point, the government had agreed to a remand in this case. How does it know why the notice got in late? Maybe the lawyer planned it that way. I mean, you know, how does he – how does the agency know? It's quite – I mean, to say that it's been presented with it, I mean, somebody has to make a motion and say, look, this is an effective assistance of counsel. You're saying the agency ought to guess from the fact that the notice of appeal is late, that every time a notice of appeal is late, that it's per se an effective assistance of counsel? Is that the rule? Well, it's court counsel. We have no statute of limitations. We have no notice of appeal time or anything else. Any time a lawyer files something late, bam, you're off the hook. Well, in the situation – well, in fact, I mean, that is the case that this Court held in Dieringer. That is what this Court held in Sion. That is, in fact, what this Court held in Hernandez-Mendoza, where it declined. It was the exact same situation. If you go back and read the reply brief filed by the Petitioner, which is online and available on Westlaw, it was a pro se Petitioner who was acting in a situation. He missed – because of the complicated procedural requirements of immigration court proceedings, he missed the – he missed the motion to reopen deadline, filed a petition for review. This Court declined to exercise the potential exhaustion doctrine. This isn't a situation where Mr. Schraub intentionally bypassed. Mr. Schraub actually filed motions to reopen with the immigration judge. However, by the time that his counsel – this Court appointed him counsel, he no longer had an effective administrative remedy. Now, what – now, in fact, remand is appropriate here. The government, in fact, at one point agreed to that. Let me just ask you about that. So what you're saying is if he had gone to the agency and say, whoopsie, I now have a lawyer, and I realize what I should have done is filed a motion to reopen within 90 days, but I was pro se, but now I've got really good lawyers who know what they're doing. And if out of the 90-day period I petitioned the agency to reopen – to grant me leave to file a motion to reopen late, out of the 90-day period, that was something that the agency had no authority to grant? Well, the Department of Homeland Security – So no, it would be good. It really – it really would be good. The agency could – the agency could sui sponte. It could sui sponte. So you have a sui sponte. I'm not sui sponte about it. I'm positive that a lawyer actually presents a motion, that the lawyer, maybe you, maybe your co-counsel, goes to the agency and says, look, we got in the picture late. There was a schlock lawyer before us. After the schlock lawyer went out of the picture, my client was pro se. We just got in the picture, and this is – you know, I'm now asking the agency to excuse the delay for my client who was pro se and to reopen the period outside the 90-day period. The agency could grant it. There's no lack of jurisdiction for that. It could not. And if it did, you wouldn't need to be here, right? Well, that would – the agency could do that. And it's not as if we haven't sought to deal with the government and tried to get an agreement on remand here. We've approached the government once, and the government filed a joint motion for remand. The government then switched its position and at the last second decided that it wanted to oppose a remand here. Just yesterday, we received an e-mail from government counsel indicating that they would perhaps agree to a joint motion to remand with the Department of Homeland Security. However, that just indicates how fleeting these options are, because the government has wavered back and forth, and we can have no confidence that they would – I'm sorry. I'm sorry. A joint motion between the two of you? Mm-hmm. Why are you wasting our time, then? Oh, we have – we have approached the government and asked them for that opportunity. However, the government has changed its position. I got the picture. You got an e-mail yesterday. Mm-hmm. You said counsel. You're treating it as a third person. Let's not use the royal way. Let's try me and him or he and I. Okay. Or, as a matter of fact, pointing to who – just so I don't get confused. So somebody got an e-mail. Point to the person who got the e-mail. I received an e-mail. Okay. You got the e-mail. Right here. Okay. You. Okay. I received an e-mail. Okay. And now point to the person who – before they send the e-mail. Him. That man right there. That's a record reflector. The government counsel looks intimidated. And what did the said e-mail say? The said e-mail said that DHS, the Department of Homeland Security, would join in a motion to remand. Now, I received that e-mail after having prepared for this oral argument and after having flown to this court. Wait a second. Are you making such a motion, counsel? Your Honor, I'm prepared to address how this all came about in my argument. Okay. All right. I was trying to cut to the chase here. Well, and with respect to sua sponte, the sua sponte exception, I mean, first, the agency did not exercise its discretion at that point nor since. But in addition, that deprived this court of jurisdiction to review the agency on its decisions, because it would be a discretionary decision that's left and committed to the agency's discretion that would take away a significant – I mean, a significant benefit of the appellate process in immigration proceedings. And given that that is – I'm trying to understand. What would? What's that? What would? The exception – the agency has the opportunity, sua sponte, on its own motion, which is not on our motion, but on its own motion, to take a late and numerically barred motion to reopen. Well, I don't mean to criticize how you practice law, but it seems perfectly obvious to me that you have nothing to lose by going to the agency and petitioning them to reopen. And if you did that, you wouldn't get an argument in the Ninth Circuit, but you would serve your client better. I mean, this is Department of Homeland Security. They are a – counsel is DHS, right? I'm with the Department of Justice. I represent DHS. DHS. I get so confused now. I long for the days of the INS. A lot of people do, right? Well, they gave me a migraine card, so – and it was actually green at the time. Anyway, this is – this is counsel, right? And they represent DHS, who is a party litigant. The BIA is an administrative agency, and it seems to me that the government can take whatever position it wants, but the agency could rule on a motion to reopen with or without the government's consent. That's what I don't understand. Why do you need this incriminating fellow on your right, my right? Why can't you just go by yourself, which I gather is a thrust of the Chief's question? Well, because the agency's regulation actually does not give the opportunity to move for a late and untimely motion to reopen. There's a specific agency regulation here, 8 CFR 1003.2. It says you must file your motion to reopen within 90 days, and you cannot file more than one motion to reopen. It says the agency is sua sponte authority on its own motion, but it does not provide for counsel to go and submit a motion that's late. So the only other option would be a joint motion between the parties, either sua sponte by the agency or a joint motion joined in by the government. Those are the only options to get a late motion to reopen. That's exactly the case. Now, in this situation, counsel – So does regulation provide for joint motions? The regulation provides for joint motions. Now, we have approached the government before about this to make a motion, and the government made a motion with this Court for a remand. And the parties had agreed at that point, but the government – and the government obtained a benefit of a delay in its briefing schedule in order to pursue that motion. The appellate commissioner denied that motion. My understanding from the staff attorneys is that was denied because the appellate commissioner felt that he was not empowered to issue a vacater of the BIA's decision. And at that point, rather than coming back and pursuing a remand without vacater, the government changed its position and decided to oppose remand here. And now, just yesterday, I find out that the government – the government would agree to go back and do that. However, I believe I have in good faith attempted to negotiate for the solution that you've mentioned that we might be able to seek, which is going back to the BIA. And what we seek here is BIA review. We're not – Well, why don't you come back and tell me what you've decided. You've been here all morning. We've now taken almost 20 minutes of time. Why don't you just – we'll recess this case. We'll have another case. You guys go outside and come back and tell us what you decided to do. Perfectly with the stipulation. Yeah, exactly. Good grief. I mean, don't you guys know about courthouse steps and all that? Your Honor, if I can just have three minutes of course time. I mean, I think I can clearly lay out the government's position. Okay. I guess the stipulation you can copy. All right. Seems like it. Nothing comes easy with lawyers. I apologize, Your Honor. All right. Gloria O'Connor on behalf of the Attorney General. With respect to how this joint motion re-opening came about, I was assigned this case for argument about two weeks ago. I first received a phone message. We don't need your life history. We really don't. Why don't we cut to the chase? Just bear with us until you tell us. Yes, Your Honor. I received a phone message from opposing counsel last Thursday, a voicemail saying he wanted to discuss the case. Him. Yes. Mr. Lieberman, I'm sorry. I returned his call on Friday, and he said he noted in our brief that one of the exceptions to the time limits is a joint motion re-open. Would DHS be willing to consider that? That is the first time I am aware that the other side has ever presented this option to the government. But you've only been in the picture for two weeks, so that doesn't help much. I mean, a lot could happen before two weeks ago. Okay. We agree you're a good guy. Okay. Now tell us where you stand. I mean, all of this, fine, you're a good guy. He's a good guy. Everybody's a good guy. Now tell us what we. This cuts to the chase, okay? Yes. Yes, my client has agreed that they would join him in a motion re-open to have the board consider the merits of this alien's appeal. That has nothing to do with whether or not the legal question before this Court of whether or not it should consider an ineffective assistance to counsel claim in the first instance in this petition for review. But you file such a motion and it is accepted, then this case becomes moot. Exactly. I mean, he would move to dismiss the petition. Why don't we defer submission in this case on a 30-day basis, and you all can give us 30-day reports, letting us know where things stand. That's fine with me, Your Honor. The only thing we'd ask is that there's a state of deportation, Your Honors, and we just want to make sure that the use of sending Mr. Shroud back to the BIA is not a means by which to have him deported while his motion to re-open is pending or being, if necessary, reviewed by this Court. Well, doesn't the stay remain in effect? Well, it remains in effect until we rule on the issue. Yeah, pending remanded. This Court lifted the stay. The alien moved pro se to have the stay lifted. It was granted by this Court. So if he wants to stay, the government says he better file another stay motion in this Court, because it was lifted by this Court. So, I mean, that, again, is a real danger here. The government is actually opposing the stay. Mr. Shroud could be sent back. You know, I think you guys need to go out and work this out, really. And, you know, this is why coming to court early and speaking to opposing counsel is a good idea. Anybody else out there needs to talk to opposing counsel? We could have saved ourselves all of this. If you guys could also reach agreement on the issue of the stay, that would be helpful. Yeah, yeah. Just go out and come back, okay? We'll recess in this case and call United States v. Zimmer. We'll defer submission of the case until we hear further. We ask for 30-day reports. Status reports. I mean, 30 days too often? 60 days? How long do you think it would be? 60 days would be appropriate. Okay, 60-day status reports. Okay, thank you, Your Honor. If we fail to get a report on any 60-day anniversary, I mean 60-day period more than a week, we may resubmit the case and decide it. So be sure to give us 60-day reports. Yes, Your Honor. Okay. Thank you, counsel. Good work. Thanks. You know, the courthouse steps prove useful once again. Okay. Submission is deferred in the first Traube case. Traube. How was it pronounced? Finally, we have.
judges: Kozinski, Rawlinson, Baer